Herbert, J.,
dissenting. I cannot concur in the per curiam. opinion because it presents and decides a question which I do not consider necessary to resolve, namely, whether the signers of a petition filed under authority of Section 3311.23, Revised Code, have a right to withdraw their signatures from the peti *263 tion before official action is taken by a county board of education. As I view it, the problem is to determine what is the duty of the county board of education after a petition valid on its face is filed under the authority of this section. It reads, so far as pertinent here, as follows:
‘ ‘ If a county board of education deems it advisable to transfer a part or all of the territory comprising a local school district within the county school district to an adjoining county school district or to an adjoining city or exempted village school district, such transfer may be made by the county board of education by the adoption of a resolution providing for such transfer. Such a transfer shall not take effect if, within 30 days after the filing of the map showing boundaries as required by paragraph (C) of this section, a majority of the qualified electors residing in the territory transferred voting at the last general election file with the county board of education a written remonstrance against such transfer. A county board of education may accept a transfer of territory from another county school district or from a city or exempted village school district and annex such territory to a contiguous local school district of the county school district.
“If there is filed with a county board of education prior to the first day of February in any even numbered year a petition requesting the transfer of a part of or all of the territory comprising a local school district of the county school district to an adjoining county school district or to an adjoining city or exempted village school district, and such petition is signed by 75 per cent of the qualified electors residing in the territory which the petition seeks to have transferred, voting at the last general election, such county board of education shall, prior to the first day of April next following the filing of such petition with the county board of education, either adopt a resolution transferring the territory as requested by such petition or adopt a resolution objecting to the requested transfer. If the resolution adopted Toy the county hoard of education is a resolution objecting to the requested transfer, then the county hoard of education shall, within ten days after the adoption of such resolution, file a copy of the resolution, together with a copy of the petition and a map showing the boundaries of the territory *264 which the petitioners seek to have transferred, with the State Board of Education. The State Board of Education, if it is not in agreement with the county board of education’s action in objecting to the requested transfer of territory, shall, prior to the first day of August next following such action, provide for a hearing to be held in the county where the proposal to transfer territory was filed. The State Board of Education, a committee of its members designated by such board, or its representative designated by such board, shall conduct and preside at such hearing. For a period of ten days after such hearing the petitioners who signed the original petition which was filed with the county board of education pursuant to this section may request that their names be removed from such petition. Not later than the first day of September after the filing with the State Board of Education, pursuant to this section, of a proposal to transfer territory, the State Board of Education shall either approve or disapprove such proposed transfer of territory and shall submit, in writing, to the county board of education filing such proposal, notice of its decision. If the decision of the State Board of Education is an approval of the proposed transfer of territory, then the county board of education shall, within 30 days after receiving the State Board of Education’s decision, adopt a resolution transferring the territory.” (Emphasis added.)
As I read that section, the General Assembly was not concerned with the sufficiency of a petition filed thereunder except of course as it may appear insufficient on its face. It must be kept in mind that under this law petitions are required to be signed by 75 per cent of the qualified electors residing in the affected territory. Nowhere in the section is the sufficiency of the petition considered or mentioned. Nor is the county board of education denied its discretionary power to adopt a resolution either transferring the territory as requested or objecting to the requested transfer. If a resolution objecting to the transfer is adopted, then the section provides (see emphasis above) that the matter goes to the State Board of Education, which in turn is not bound. If it is in agreement with the county board, that ends the matter, but if it is not in agreement then further steps are provided. It should be noted that *265 only in the event that the state hoard disagrees with the county board and favors the transfer requested in the petition is a hearing required. If the state board agrees with the county board in its resolution against the proposed transfer, no question of sufficiency of the petition ever arises. In fact, the request could be denied on that ground. Nor does the ten-day period provided for petitioners to request the removal of their names from such petition after the hearing ever start to run.
Attention is also called to the language of the second paragraph of Section 3311.23, Revised Code, quoted in the per curiam opinion, that in that period of ten days the petitioners “may request” (emphasis added) that their names he removed from such petition. That language is unique, to say the least. Only when the state board disagrees with the county board and favors the transfer proposed by petition does the General Assembly extend to the petition signers an opportunity to take steps to “request” to have their names removed therefrom. To put it another way, the state board is given one final chance to reascertain the views of the signing electors and reconsider its declared position in that ten-day interim prior to the first day of September following the filing of the petition, if it sees fit so to do. In this case, for example, those signers who desired to advise the state board of their change of view could have done so not only at the time of hearing but also for ten days following, and the state board would then have been in a position to know exactly how many of the affected-area electors favored and how many opposed the proposed transfer just before making its final decision. The judgment of the court here will permit the county board to stifle this process even though admittedly a large majority of the electors want the transfer.
Although this dissent may seem to be in contradiction of my concurrence in the case of Lynn v. Supple, Clerk, ante, 154, the situation here is in my vieAv clearly distinguishable from that which confronted the court in that case. There, a referendum petition could be filed upon the obtaining of signatures of a mere ten per cent of the electorate, and the sufficiency of the petition became a preliminary consideration before the mandatory requirement of action upon it. No discretion was left in the body with which the petition was filed. The clear intent of *266 tlie Legislature in providing for initiative and referendum petitions, as well as nominating petitions, was that sufficiency must be a prerequisite before action thereon must follow. I can read no such legislative intent in Section 3311.23, as none of the usual safeguards for testing the sufficiency of petitions such as addresses, wards and precincts of signers are required. To further illustrate my view of this section let us assume a hypothetical case under the provisions of its first two sentences. Assume the adoption voluntarily by a county board of a resolution providing for a transfer. Then assume that a written remonstrance signed by a majority of the electors residing in the territory to be transferred is filed with the county board 30 days later. As I view these sentences such proposed transfer is thereafter ineffective and cannot be revived by subsequently attempted withdrawals of signatures from the written remonstrance. The right to withdraw is obviously not contemplated and the county board is without further power other than to scrutinize the written remonstrance for sufficiency when filed.
Here the mandamus petition alleges two causes of action, one based on a petition originally containing 234 names from which 22 were sought to be withdrawn by a counterpetition on February 13, and the other based on a petition originally containing 221 names from which 15 were sought to be withdrawn by counterpetition on the same date, February 13. These purported withdrawals are alleged in the answer. It was agreed that there were 290 qualified electors residing in the territory requested to be transferred, 218 being 75 per cent of that figure.
As to the first cause of action, respondent alleges in its answer that the petition originally signed by 234 electors was defective in that it “did not describe the territory sought to be transferred.” This issue is not raised in the answer to the second cause of action, so, for the purpose of this discussion, let us consider only the second cause of action and the answer thereto. The mandamus petition alleges:
“Said respondent board of education on the 14th day of February 1956 at a recessed meeting of said board passed a resolution objecting to the requested transfer. Notwithstanding the fact that said respondent board of education adopted *267 said resolution objecting to the requested transfer, it has wholly failed and refused within the period of ten days following the adoption of said resolution to file a copy of the resolution together with a copy of the petition and a map showing the boundaries of the territory which the petitioners sought to have transferred with the State Board of Education as required by law.”
The respondent’s answer to this allegation contains the following:
“At said time [February 14, 1956], respondent determined that there were two hundred six (206) signatures on said petition of qualified electors residing in the territory which said petition sought to have transferred, who voted at the last general election in Shelby County, Ohio, that this constituted less than the seventy-five per cent (75 %) required by Section 3311. 23 of the Ohio Revised Code, whereupon respondent unanimously denied said petition and held it to be without effect.

it* * *

“Respondent admits that it has not filed any copy of its resolution together with a copy of said petition and a map showing the boundaries of the territory which the petitioners sought to have transferred with the State Board of Education, and respondent says that, by reason of the aforesaid facts, it had and has no obligation so to do.”
On the record the respondent admits relators’ allegation that it passed a resolution objecting to the requested transfer and also admits that it did not file with the State Board of Education a copy of such resolution together with a copy of a map showing the boundaries of the territory sought to be transferred.
It is my view, therefore, that the demurrer to the answer of respondent should have been sustained.